In re Melvin Eugene SHARP, also known as Mel Sharp, doing business as Aspen Place Outfitters, LLC, Debtor.

Douglas E. Larson, Chapter 7 Trustee, Appellant,

v.

Melvin Eugene Sharp and United States Trustee, Appellees.

BAP No. CO–13–053.
Bankruptcy No. 12–21611.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Filed April 11, 2014.

John C. Smiley (Harold G. Morris, Jr., with him on the brief), of Lindquist & Vennum LLP, Denver, CO, for Appellant.

Michael Jude of JudeLaw, LLC, Denver, CO, for Appellee Melvin Eugene Sharp.

Before KARLIN, JACOBVITZ, and HALL,[1] Bankruptcy Judges.

## OPINION

HALL, Bankruptcy Judge.

The bankruptcy trustee seeks reversal by this Court of a bankruptcy court decision allowing the debtor to exempt certain personal property under Colorado's "tools of trade" exemption. The trustee objected to the claimed exemption on the ground that the debtor's business was not a "gainful occupation," as required by the exemption statute, because it was not "profitable" as of the date of the petition. We affirm the bankruptcy court's decision allowing the exemption.

## I. BACKGROUND

Appellee Melvin Sharp ("Debtor") filed a Chapter 7 bankruptcy petition on June 1, 2012, and Appellant Douglas Larson ("Trustee") was appointed as trustee of his estate. In his schedules, Debtor claimed certain personal property used in his outdoor guide business as exempt under Colorado's "tools of trade" exemption. Debtor's primary occupation is customer relations manager at a Kroger-owned City Market store in Cortez, Colorado. Debtor moved from Arizona to Colorado in June 2010 to take a position as assistant store manager of a City Market in Pagosa, Colorado. That store was closed a few months later, and Debtor worked on an hourly basis for the remaining Pagosa City Market until 2012, when he obtained the Cortez job.

Even before his move to Colorado, Debtor began the process of creating his guide business, Aspen Place Outfitters ("Aspen"),[2] with the intention of growing it to the point that he could retire from his primary occupation within five years and devote himself full-time to outfitting. While he remains employed at City Market, Debtor's ability to work as a hunting and fishing outfitter is limited to times when he can use vacation time from the store, which he typically does during the

1. Honorable Sarah A. Hall, U.S. Bankruptcy Judge, United States Bankruptcy Court for the Western District of Oklahoma, sitting by designation.

2. Although Debtor listed this business as an LLC in his schedules, he later stipulated that it was not an LLC and that all of the property described as business assets was owned by him personally.

fall hunting season. In January 2010, while still living in Arizona, Debtor attended an Outfitters Association meeting in Grand Junction, Colorado in order to learn as much as he could about the outfitting business. As a result of that experience, Debtor joined the Association, set up a website for his business, and designed business brochures. He attended another Association meeting in May 2010, in Glenwood Springs, Colorado, to gain even more insight into the business. Also in 2010, Debtor obtained an outfitter's license from the State of Colorado, which has been renewed annually since that time, and set up bank accounts for Aspen at the Dolores State Bank in Colorado. Since February 2010, Debtor has attended some "guide expositions" in Phoenix, Arizona, which he described as "meeting areas for potential clients." Debtor advertises his business both through his own website and with newsletters that his website designer sends out to an email client base.

As an outfitter, Debtor provides clients with as much or as little of the expertise, tools, food, transportation, and lodging[3] as they need or want for hunting or fishing trips. Aspen charges for those services. Debtor can provide clients with appropriate areas in which to hunt or fish, information about dates and restrictions, as well as transport to hunting and fishing areas, appropriate gear, and food and shelter. He also has the ability to pack out clients' kills on horseback. In the future, once he can devote his efforts to Aspen full-time, Debtor plans to become licensed as a firearms safety instructor and to offer horseback rides and pack trips in the summers. Since 2010, Debtor has both attempted to increase his knowledge of the outfitting business and to build up a client base, hoping both for repeat business and for "word of mouth" advertising. Although Aspen had not achieved a net profit by the petition date, it appeared to be gaining momentum, and Debtor expected it to produce a small profit in 2012. However, as of the May 2013 trial date, Debtor was not yet ready to "give up his day job," because he did not feel that Aspen was to the point it needed to be to allow him to do so.

When Debtor filed his bankruptcy schedules, he claimed several firearms, two boats, a camper, an ATV, a utility trailer, a two-horse trailer, and some fishing poles as exempt property used in the operation of Aspen. Trustee objected to the exemption on the ground that it applied only to "gainful occupations," which he asserted means a business that was "profitable" as of the petition date.[4] The bankruptcy court held a non-evidentiary hearing on Trustee's objection in November 2012, ruling thereafter, as a matter of law, that "an occupation need not be profitable at the time of filing."[5] Rather, the bankruptcy court determined that the proper inquiry is whether a debtor's non-principal activity is a valid occupation, as opposed to merely a hobby or a pastime.[6] Following that

---

**3.** Debtor purchased as his residence, a 1200 sq. ft. cabin with three bedrooms and one bath in southwestern Colorado, near a reservoir, river, and mountain recreation areas, which he uses for clients that desire housing.

**4.** Trustee also asserted that Colorado's tools of the trade exemption is only available with respect to a debtor's *primary* occupation, but later elected not to pursue that argument.

*See* Opening Brief of Appellant Douglas E. Larson, Chapter 7 Trustee, at 1 n. 1.

**5.** *In re Sharp*, 490 B.R. 592, 606 (Bankr. D.Colo.2013). Although Trustee sought permission to appeal that interlocutory ruling to this Court, his request was denied.

**6.** *Id.*

ruling, the bankruptcy court held an evidentiary hearing at which only Debtor testified, and from which it concluded that Trustee had failed to establish that Debtor's claimed exemption was improper. Trustee timely appealed.[7]

## II. APPELLATE JURISDICTION

■ This Court has jurisdiction to hear timely-filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[8] A judgment that either grants or denies a debtor's claimed exemption is final for purposes of appeal.[9] Trustee's notice of appeal was timely filed from entry of the bankruptcy court's amended judgment[10] and, as neither of the parties to this appeal elected to have the appeal heard by the United States District Court for the District of Colorado, they have consented to appellate review by this Court.

## III. ISSUE AND STANDARD OF REVIEW

What is required for a business endeavor to satisfy the "gainful occupation" requirement of Colorado's tools of trade exemption statute?

■ An appellate court reviews a trial court's determination of state law de novo.[11] De novo review requires an independent determination of the issue, giving no special weight to the bankruptcy court's decision.[12] Fact findings underpinning a bankruptcy court's legal determinations are reviewed for clear error.[13] A finding of fact is clearly erroneous only if it is "unsupported in the record, or if after our review of the record we have the definite and firm conviction that a mistake has been made."[14]

## IV. DISCUSSION

Colorado has "opted out" of the federal bankruptcy exemptions pursuant to Bankruptcy Code § 522(b)(2)[15] and provides its own exemptions for use by Colorado resi-

---

7. The bankruptcy court rendered an oral ruling on May 2, 2013 at which he asked Debtor's counsel to draft Findings and Conclusions. The documents subsequently submitted by Debtor's counsel were signed by the court and entered on June 5, but are not included in the appellate record. On June 14, the court granted Trustee's motion to extend the time to appeal to July 10. On June 27, Trustee filed a motion to alter or amend the judgment on the ground that the prepared Findings failed to include the court's stated finding that Aspen was "thus far not profitable." Trustee's motion was granted on July 3, and amended findings and conclusions, as well as an amended judgment, were entered on the same date. Trustee filed his Notice of Appeal on July 16, within 14 days of entry of the amended judgment.

8. 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002; 10th Cir. BAP L.R. 8001–3.

9. *In re Duncan*, 294 B.R. 339, 341–42 (10th Cir. BAP 2003).

10. Fed. R. Bankr.P. 8002.

11. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991); *Rajala v. Gardner*, 709 F.3d 1031, 1037 (10th Cir.2013), *cert. denied*, —— U.S. ——, 134 S.Ct. 164, 187 L.Ed.2d 41 (2013); *Diamond v. Vickery (In re Vickery)*, 488 B.R. 680, 685 (10th Cir. BAP 2013).

12. *Salve Regina Coll.*, 499 U.S. at 238, 111 S.Ct. 1217.

13. *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir.2004).

14. *Holdeman v. Devine*, 572 F.3d 1190, 1192 (10th Cir.2009) (internal quotation marks omitted).

15. Unless otherwise noted, all further statutory references in this decision will be to the Bankruptcy Code, which is Title 11 of the United States Code.

dents in bankruptcy cases.[16] As have many other jurisdictions, Colorado has enacted a "tools of trade" exemption to allow its debtors to remove tools that are needed for their work from attachment by creditors, both in bankruptcy and in non-bankruptcy attachment proceedings.[17] The Colorado statute provides:

> The following property is exempt from levy and sale under writ of attachment or writ of execution:
>
> (i) The stock in trade, supplies, fixtures, maps, machines, tools, electronics, equipment, books, and business materials of any debtor used and kept for the purpose of carrying on any *gainful occupation* in the aggregate value of twenty thousand dollars.[18]

Debtor asserts that the tools and equipment he needs for his outfitting business, specifically, firearms, boats, a camper, an ATV, a utility trailer, a horse trailer, and fishing poles, are exempt from his bankruptcy estate under § 13–54–102(1)(i) as tools of his trade. The total value of the tools and equipment Debtor claimed to be exempt is $5,415.50.[19]

A debtor's claim of an exemption will be allowed unless an objection to it is timely made.[20] In addition, where an objection is made, the party asserting that objection bears the burden of proving the exemption was improperly claimed.[21] In this case, the burden was on Trustee to prove that Debtor's claimed tools of trade exemption was improper. Trustee chose to do so primarily on the basis that Aspen had never produced a net profit, which he claimed was necessary to any finding that an occupation is "gainful" under the Colorado statute.

The Constitution of Colorado specifically requires that its exemption laws be liberally construed:

> Colorado's policy with respect to exemption laws is required by Colorado Constitution article XVIII, section 1. The purpose of the exemptions is to preserve the debtor's means of support, and to preserve a home for the family. Courts must liberally construe the statutory exemptions and must favor the intent and purposes of the statute.[22]

---

**16.** *See* Colo.Rev.Stat. § 13–54–107 (1981), which specifically denies federal bankruptcy exemptions to residents of Colorado, and provides that the only exemptions that may be claimed by such residents are those expressly provided by Colorado statute.

**17.** For example, the Bankruptcy Code provision allows a debtor to exempt up to $2,175 worth of "implements, professional books, or tools, of the trade of the debtor" from their estate. 11 U.S.C. § 522(d)(6).

**18.** Colo.Rev.Stat. § 13–54–102(1)(i) (2010) (emphasis added). Unlike the Colorado exemption, the corresponding federal exemption, set forth in § 522(f)(1)(B)(ii), contains no express gainful occupation requirement.

**19.** *See In re Sharp*, 490 B.R. 592, 596 (Bankr. D.Colo.2013), which states this figure. However, adding up the numbers attributable to § 13–54–102(1)(i) in Debtor's Amended Schedule C yields the figure $5,614.50, which

exceeds the bankruptcy court's figure by $201. We are unable to determine the reason for this discrepancy, but consider it de minimis, and Debtor appears to accept the bankruptcy court's figure.

**20.** *Taylor v. Freeland & Kronz*, 503 U.S. 638, 642, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).

**21.** Fed. R. Bankr.P. 4003(c); *In re Lampe*, 331 F.3d 750, 754 (10th Cir.2003); *In re Hall*, 441 B.R. 680, 685 (10th Cir. BAP 2009); *In re Prowant*, No. 09–26845, 2010 WL 9922756, at *3 (Bankr.D.Colo. Sept. 16, 2010); *In re Coleman*, 209 B.R. 739, 741 (Bankr.D.Colo.1997).

**22.** *Beneficial Fin. Co. of Colo. v. Schmuhl*, 713 P.2d 1294, 1298 (Colo.1986) (citations omitted). *See also In re Larson*, 260 B.R. 174, 193 (Bankr.D.Colo.2001) (recognizing "the long-standing tradition in the courts of Colorado to construe all exemptions laws liberally in favor of debtors"). Article XVIII, section 1

This appeal largely depends upon the interpretation of Colorado's tools of trade exemption statute. Such statutory interpretation is subject to well-established rules:

> When interpreting a statute, the language of the statute is examined with the objective of giving effect to the intent of the legislature. Language is given its commonly accepted and understood meaning if the unambiguous statutory language is not defined and the result is not absurd or contrary to the legislative purpose. If the statute is unambiguous, we do not resort to further rules of statutory construction to determine the statute's meaning. If the language is ambiguous, however, we look to legislative history, prior law, the consequences of a given construction, and the goal of the statutory scheme to ascertain the correct meaning of a statute.[23]

The term "gainful occupation" as used in the Colorado tools of trade exemption is not defined by either the Colorado exemption statutes or the Bankruptcy Code, nor is there any legislative history that adds clarity to the term. We must, therefore, endeavor to determine the meaning of that provision with the required liberal construction in mind.

Prior to the bankruptcy court's decision in the present case, only two cases have directly considered the meaning of "gainful occupation" in the context of the Colorado statute. In the first case, *In re Prowant*,[24] the bankruptcy court noted that the common meaning of "gainful" is "profitable" or "lucrative".[25] When faced with a debtor's trade that had once been profitable but had recently incurred significant losses, the bankruptcy court was "mindful that exemptions are never needed unless the debtor has suffered financial setbacks. The very purpose of an exemption is to preserve to the debtor his means of support."[26] Focusing more on application of the burden of proof rather than creating a strict test for determining if a "gainful occupation" exists, the *Prowant* decision held that, in order to rebut the presumption in favor of the debtor's claim of the tools of trade exemption, the exemption objector must come forward with evidence that the occupation is a mere hobby or pastime, has not provided any means of support (profit or a source of income) for the debtor, or has a lengthy record of losses.[27] Since the objector in *Prowant* did not present the bankruptcy court with sufficient evidence, the objectors did not meet their burden of proof and the claimed tools of trade exemption was sustained.[28]

In a later decision from the Colorado bankruptcy court, *In re Sedillo*,[29] the bankruptcy court, relying on three dictionary definitions, concluded that "the plain meaning of the word 'gainful' is profitable

---

of the Colorado Constitution provides that "[t]he general assembly shall pass liberal homestead and exemption laws."

**23.** *In re Maestas*, CO–12–100, 2013 WL 3786719, at *2 (10th Cir. BAP July 22, 2013) (footnotes and internal quotation marks omitted).

**24.** No. 09–26845, 2010 WL 9922756.

**25.** *Id.* at *3 (citing *Black's Law Dictionary* 678 (6th ed. 1990)).

**26.** *Id.* at *4 (citing *Watson v. Lederer*, 11 Colo. 577, 19 P. 602 (1888); *Smith v. Pueblo Mercantile & Credit Ass'n*, 82 Colo. 364, 260 P. 109 (1927)).

**27.** *Id.*

**28.** *Id.*

**29.** *In re Sedillo*, 476 B.R. 619 (Bankr.D.Colo. 2012).

(or at least capable of being profitable)."[30] The *Sedillo* court then ruled that the debtor before it was not entitled to claim a tools of trade exemption because her role as a foster parent did not qualify as a "gainful occupation," noting that foster parents receive reimbursement of their expenditures rather than compensation and were not in business for profit.[31]

Contrary to both *Prowant* and *Sedillo*, the bankruptcy court in the present case concluded that the term "gainful occupation" in the statute was ambiguous rather than plain. In reaching that conclusion, the bankruptcy court relied on Tenth Circuit precedent to the effect that, even though statutory language may appear plain, the fact that different courts have reached different conclusions as to its meaning is "indicative of the text's ambiguity."[32] We agree that the term "gainful," as used in the Colorado statute, is ambiguous.[33]

The bankruptcy court in this case never attempted to define the term "gainful," instead choosing to focus on the "legitimacy" of Debtor's non-primary occupation. Thus, although the bankruptcy court appeared to reject profitability as a requirement imposed by the term "gainful," it did consider profitability (or at least *potential* profitability) as relevant to its determination of Aspen's "legitimacy" as a secondary occupation The bankruptcy court concluded that "an occupation need not be profitable at the time of filing," to satisfy the exemption, but a non-principal occupation "may not be merely a hobby or pastime and it must meet the factors set forth herein with respect to what constitutes a valid non-principal occupation," including, whether it is "profitable or at least capable of being profitable in the foreseeable future."[34] Based on this conclusion, the bankruptcy court set the matter for an evidentiary hearing.[35]

30. *Id.* at 625. *Sedillo* also concluded that the plain meaning of the term "occupation" in the exemption statute was "principal work or business," with which interpretation the bankruptcy court in the present case disagreed. *See In re Sharp*, 490 B.R. at 598, 601 (concluding that the exemption is available "for *every* and *all legitimate* occupations held," rather than just the "principal" occupation.). However, the primary occupation issue has been waived in the present appeal and, therefore, need not be addressed in this opinion.

31. *Sedillo*, 476 B.R. at 625. In reaching its conclusion, the *Sedillo* court also noted that foster parent responsibilities are mostly "identical to those of any person parenting biological or adopted children," and such responsibilities, while "beneficial," are not "profitable." *Id.* at 625–26.

32. *In re Sharp*, 490 B.R. at 599 (*quoting In re Stephens*, 704 F.3d 1279, 1284 (10th Cir. 2013)).

33. In the effort to define the term "gainful occupation" as it is used in Colorado's tools of trade exemption, we note that the Colorado

legislature specifically used the term "profit" in a different exemption statute. Thus, Colo. Rev.Stat. § 39–3–122 exempts "[a]gricultural equipment which is used on any farm or ranch in the production of agricultural products" from property tax, and Colo.Rev.Stat. § 39–1–102(1.3) defines such equipment as "personal property used on a farm or ranch ... for planting, growing, and harvesting agricultural products ... for the primary purpose of obtaining a monetary profit[.]" As such, it appears that, had the Colorado legislature intended for a "gainful" occupation be limited to only an occupation making a "monetary profit," it certainly knew the appropriate language to use. *People v. Torrez*, 316 P.3d 25, 36 (Colo.App.2013) ("We presume that the legislature chooses its words carefully").

34. *In re Sharp*, 490 B.R. at 602, 606.

35. Assuming that the Colorado exemption is available for secondary occupations, there is nothing in the statute itself that suggests different standards of "gainfulness" apply to primary and non-primary occupations. In fact, the bankruptcy court's focus on legitimacy

That hearing was held in May 2013, at which the only witness was Debtor. The parties effectively agreed prior to the hearing that Aspen was "not profitable" as of the petition date. Having reviewed the transcript of the evidentiary hearing, it would be nearly impossible for this Court to conclude that the bankruptcy court's findings regarding Aspen's legitimacy as a secondary occupation were clearly erroneous. Debtor testified extensively regarding his efforts to grow Aspen into a business that would allow him to devote himself to it full-time. Debtor's unrebutted testimony makes clear that Aspen was not simply a hobby or pastime, and the "tools" for which Debtor claimed the exemption were necessary to the business' success, even though not every tool was used for every client. The bankruptcy court found that, as of the May 2013 hearing, Aspen was "an entrepreneurial business that may become viable in the near future." [36] This finding is well supported by the record. However, what the court did not do was define the parameters of "gainful occupation," specifically whether it must be "profitable" or merely beneficial, and whether its gainfulness is measured at the time of the petition, some other point in time, or over a period of time that may or may not include the future. These are the issues that must be addressed by this Court on appeal.

██ Whether or not gainful is synonymous with profitable has not been addressed within a bankruptcy context in any meaningful way.[37] However, virtually all dictionary definitions of "gainful" list "profitable" as a synonym. Moreover, it may reasonably be assumed that the "fresh start" objective in bankruptcy is only served where there is some element of profitability to a trade, the tools of which the debtor seeks to retain outside of his bankruptcy estate as otherwise exempt assets. Charitable and other socially beneficial endeavors may be admirable and necessary for the greater good, but they do not necessarily assist an "honest but unfortunate debtor" in the effort to support himself and his family. Contrary to the bankruptcy court, and consistent with the *Prowant* and *Sedillo* decisions, we conclude the term "gainful occupation" in the Colorado exemption statute requires at least some aspect of profitability.

---

appears to presuppose that a primary occupation is always "gainful." Such a presumption does have intrinsic appeal since a debtor that received no financial reward from his primary occupation ordinarily would not continue to do it. However, situations can certainly be imagined in which that is not the case. For example, a debtor might engage in a non-gainful "hobby" as a primary occupation if the debtor had another source of support, such as a spouse or a parent. In any event, as the term "gainful" in the statute modifies "any" occupation, a definition of the term that fits both primary and non-primary occupations is required.

**36.** Trustee asserts the bankruptcy court's reliance on positive psychology in reaching its February 2013 decision was error. In its decision, the bankruptcy court appeared to discount the significance of monetary profita-

bility to gainfulness, noting that the term "gainful employment" had originated in psychology, and is defined in the field of positive psychology to include positive quality of life factors, rather than mere financial gain. Under that definition, a requirement of monetary profitability would be antithetical as it would render the exemption unavailable to charitable endeavors and to occupational efforts that "produce 'profit' in the sense of a valuable exchange of ideas and potential future wealth." *In re Sharp*, 490 B.R. at 603–04. While this Court reaches the same conclusion as the bankruptcy court, the reasoning for such conclusion does not rely on positive psychology.

**37.** The lack of prior consideration of this term is at least partially attributable to the uniqueness of its use in Colorado's exemption statute.

Outside of bankruptcy, the interplay of profitability and gainfulness are regularly addressed. For example, to qualify for social security disability benefits, an individual must be unable to engage in "substantial gainful activity."[38] The Code of Federal Regulations breaks that phrase down into "substantial work activity" and "gainful work activity."[39] Gainful work activity is defined as "activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, *whether or not a profit is realized*."[40] Similarly, many insurance policies exclude liability coverage for damages that arise from "business pursuits," which are trades, occupations, or professions that are regularly engaged in with the *motive* of earning a living.[41] Thus, a "business pursuit" consists of two elements: 1) continuity and regularity of the activity, and 2) a profit motive. However, "[t]he profit need not be realized ? the issue is the *expectation or anticipation* for profit in the future."[42] Finally, the IRS allows taxpayers to deduct expenses attributable to activities engaged in "with the *predominant purpose and intention* of making a profit."[43] "Thus, it is the taxpayer's *subjective* intent to earn a profit that determines the deductibility of an activity's losses."[44] Objective factors may be considered in determining the profit intent, and "greater weight is given to objective facts than to a taxpayer's self-serving statement of intent."[45]

Some of the non-exclusive factors the IRS considers to indicate a for-profit motive clearly apply to Debtor's business venture, including that it is carried on in a businesslike manner, Debtor has obtained a level of expertise in the field and expends time and effort on the business, and losses incurred are related to start-up costs of the business and are trending downward.[46] The bankruptcy court engaged in a similar analysis in this case in concluding that Aspen was a "valid" secondary occupation.

■ Trustee also asserts that the time for measuring an endeavor's profitability is the petition date and that a business not profitable on the date a bankruptcy petition is filed cannot support the exemption. One problem with Trustee's petition date assessment is that profitability is not a static concept. The most prevalent measure of business profitability is over a 12–month period ending on the last day of a calendar or fiscal year. Even more signifi-

---

38. 42 U.S.C. § 423(d)(1)(A).

39. 20 C.F.R. § 404.1572(a) & (b).

40. *Id.* at (b) (emphasis added).

41. *United Servs. Auto. Ass'n v. Pennington,* 810 S.W.2d 777, 780 (Tex.App.1991).

42. *Id.* (emphasis added).

43. *Bronson v. Comm'r,* T.C. Memo. 2012–17, 2012 WL 129803, at *4 (emphasis added); 26 U.S.C.A. § 162(a) (allowing deduction of ordinary and necessary expenses incurred in carrying on "any trade or business") (emphasis added).

44. *Bronson,* T.C. Memo. 2012 WL 129803, at *5 (emphasis added).

45. *Sandoval v. Comm'r,* T.C. Memo. 2010–208, 2010 WL 3719257, at *4.

46. 26 C.F.R. § 1.183–2(b) (1. The activity is carried on in a businesslike manner; 2. Expertise of the taxpayer or his advisors in the activity; 3. A high level of time and effort expended in carrying on the activity; 4. An expectation that assets used will appreciate in value; 5. Taxpayer's successes in other activities; 6. Absence of continued losses beyond the usual start-up time; 7. A good ratio of any profits to losses; 8. Taxpayer's lack of substantial income from other sources; and 9. Absence of a recreational or personal pleasure motivation in the activity).

cantly, imposing a profitability requirement on a business that is measured on the date the debtor files a petition for bankruptcy relief is inconsistent with the general purpose of exemption statutes. It would likely render the tools of the trade exemption mostly unavailable to the very people it was intended to assist.[47] Exemptions are most often claimed by those in financial trouble attempting to rehabilitate their financial life. Moreover, such an outcome would undermine the directive in Colorado's Constitution that exemptions be liberally construed for the purpose of preserving the debtor's means of support.[48]

Applying all of these concepts to the issue before us, and considering the purpose of tools of trade exemptions, which is to permit debtors to retain items used in an occupation to aid them in providing support for themselves and their dependents, we conclude that, in order to disqualify a debtor's claimed tools of trade exemption under the Colorado statute,[49] the objecting party must prove by a preponderance of the evidence that the debtor's occupation is unlikely to contribute to the support of the debtor and his family in any significant way within a reasonable period of time under the specific facts of each case. Here, Trustee failed to meet that burden.

## V. CONCLUSION

Complete disregard of profitability with respect to the term "gainful occupation" in Colorado's tools of trade exemption would be difficult to justify. Indeed, while denying that it was a required element, even the bankruptcy court considered profitability in its analysis of Debtor's exemption claim. Although Aspen had not produced a yearly net profit from its inception in late 2009 to the evidentiary hearing in May 2013, it had shown a trend toward, and was nearing, profitability and could still be considered a start-up enterprise, particularly since Debtor's ability to devote himself to it was limited by his need to retain his primary employment. Further, the evidence is essentially uncontroverted that Debtor (i) intended to build Aspen into a profitable business, (ii) devoted significant effort, time, and funds into making Aspen a profitable business, and (iii) successfully obtained both clients and at least some income from the business. Despite its application of a slightly different legal test, the bankruptcy court's fact findings support Debtor's tools of trade exemption under the standard we have adopted here. Those facts establish that Aspen is likely to contribute to Debtor's support, and even to provide all of his support, within a reasonable amount of time. As such, the bankruptcy court's denial of Trustee's objection, and allowance of the claimed objection, is AFFIRMED.

---

47. *See In re Prowant,* No. 09–26845, 2010 WL 9922756, at *4 (Bankr.D.Colo. Sept. 16, 2010) ("If the Court were to hold that the farming business is not 'gainful' because it suffered a recent financial loss, then there would be very little opportunity for debtors to use this exemption").

48. *Id.*

49. Colo.Rev.Stat. § 13–54–102(1)(i) (2010).