FILED
U.S. Bankruptcy Appellate Panel
of the Tenth Circuit

June 7, 2021

Blaine F. Bates
Clerk

NOT FOR PUBLICATION*

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE TENTH CIRCUIT

_____

IN RE KELLI DENISE ALLEN and
PAUL EUGENE ALLEN,

Debtors.

_____

KELLI DENISE ALLEN and PAUL
EUGENE ALLEN,

Appellants,

v.

YVETTE GONZALES, Chapter 7 Trustee,

Appellee.

BAP No. NM-20-038


Bankr. No. 19-11843-t7
Chapter 7


OPINION

_____

Appeal from the United States Bankruptcy Court
for the District of New Mexico

_____

Before **ROMERO**, Chief Judge, **SOMERS**, and **PARKER**, Bankruptcy Judges.

_____

**PARKER**, Bankruptcy Judge.

_____

---

*     This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion. 10th Cir. BAP L.R. 8026-6.

Debtors in this chapter 7 bankruptcy case appeal the denial of their exemption claim in a cargo trailer used in their concrete refinishing business. The United States Bankruptcy Court for the District of New Mexico (Bankruptcy Court) held Debtors' concrete refinishing business did not constitute a trade under the New Mexico tools of the trade exemption statute and disallowed the exemption. We conclude the objecting party's burden of proof was not satisfied, and the Bankruptcy Court abused its discretion in denying the cargo trailer exemption, and reverse.

## I.    Background

Kelli and Paul Allen (Debtors) filed a chapter 7 bankruptcy petition in the District of New Mexico on August 8, 2019. Debtors disclosed their ownership of J&K Ventures, LLC, d/b/a Advanced Concrete Transformations (J&K, LLC) in their bankruptcy schedules.[1] Through J&K, LLC, Debtors performed concrete refinishing services, in addition to their regular employment at FedEx and Kelli Allen's employment with Home Chef. Debtors valued their interests in J&K, LLC at $6,448.17, primarily based on the value of tools and equipment the LLC owns. Debtors also listed ownership of a 1998 Pace American twenty-eight-foot cargo trailer valued at $1,000 (Trailer) used to transport and store materials used in concrete refinishing jobs.[2]

---

[1]    Bankr. Case No. 19-11843 ECF No. 13, *Schedule A/B: Property* at 12.
[2]    Bankr. Case No. 19-11843 ECF No. 13, *Schedule A/B: Property* at 4.

2

Originally, in *Schedule C*, Debtors exempted $1,450.17 of their interest in J&K, LLC pursuant to New Mexico Statutes §§ 42-10-1, -2[3] and $4,025 of their interest pursuant to New Mexico Statutes § 48-2-15.[4] Shortly thereafter, Debtors amended their schedules on April 16, 2020, and then again on April 24, 2020, revising *Schedules A, B, and C*. In amended *Schedule C*, Debtors removed the exemption claim for J&K, LLC and claimed a $750 exemption in the Trailer solely pursuant to New Mexico Statutes §§ 42-10-1, -2.[5] In addition to amending the Schedules to claim the Trailer exempt rather than the LLC, Debtors claimed an exemption in $2,630.08 in "unpaid wages garnished pre-petition by Capital One Bank."[6]

Yvette Gonzales, the chapter 7 trustee in Debtors' case, filed an objection to Debtors' exemption claims on November 1, 2019 (Objection to Exemptions).[7] The Trustee objected to Debtors' amended exemption claims, arguing Debtors were not entitled to a $750 exemption in the Trailer because they had already exempted the maximum under New Mexico's $500 personal property wild card exemption, and the Trailer did "not fall within any of the other permissible categories for an exemption"

---

[3] N.M. Stat. Ann. § 42-10-1 (1978) (Exemption for "[p]ersonal property in the amount of five hundred dollars" and "tools of the trade in the amount of fifteen hundred dollars").

[4] N.M. Stat. Ann. § 42-10-15 (1978) ("[M]aterials . . . furnished for use in the construction, alteration or repair of any building or other improvement.").

[5] *Schedule C,* at 4, *in* Appellants' App. at 57.

[6] *Id.* at 10, *in* Appellants' App. at 63.

[7] *Chapter 7 Trustee's Objections to Debtors' Claims of Exemption*, *in* Appellants' App. at 18.

under New Mexico Statutes §§ 42-10-1, -2.[8] The Trustee also objected to Debtors'

claimed exemption in the wages Capital One Bank garnished.[9] Debtors responded,

arguing the Trustee incorrectly characterized the exemption claim in the Trailer as a

"wild card" exemption.[10] Instead, Debtors claimed the Trailer exempt pursuant to New

Mexico's tools of the trade exemption because they used it to operate J&K, LLC's

concrete refinishing business. Debtors claimed they personally own the Trailer but used it

to store and transport materials, supplies, tools, and equipment J&K, LLC uses. The

Trustee did not respond to Debtors' clarification.

The Bankruptcy Court heard the Objection to Exemptions on June 26, 2020. In the

Trustee's opening statement, counsel explained that while the Trustee believed Debtors

used the Trailer in J&K, LLC's business, this use did not qualify the Trailer as a tool of

the trade. The Trustee's tool of the trade argument was not elaborate, but she did not

question the concrete resurfacing enterprise as a trade and repeatedly referred to the

---

[8]    *Chapter 7 Trustee's Objections to Debtors' Amended Claims of Exemption*, *in* Appellants' App. at 100.

[9]    We note Debtors do not assign error to the Bankruptcy Court's decision on the objection to claim of exemption in wages garnished pre-petition. Therefore, we focus on the objection to the tools of the trade exemption. *See* Appellants' Br. 1.

[10]   *Response to Trustee's Objections to Debtors' Amended Claims of Exemption*, *in* Appellants' App. at 112.

concrete resurfacing work as a business.[11] The Trustee did not call any witnesses at the hearing, instead presenting her case through cross-examination of Debtors.

Kelli Allen testified she and her husband owned the Trailer personally but used it to operate J&K, LLC,[12] and only used the Trailer for J&K, LLC jobs.[13] On cross-examination, the Trustee introduced Debtors' amended schedules and had Mrs. Allen admit Debtors failed to list the Trailer as "machinery, fixtures, equipment, [or] supplies" used in a business or trade.[14] On redirect, Mrs. Allen explained the failure to list the Trailer on line 40 was an oversight.[15] The Trustee also inquired about Trailer's ownership by directing Mrs. Allen to line 42 of *Schedule A/B: Property*.[16] Line 42 states J&K, LLC stores its tools, equipment, and materials in the Trailer and references line 4, indicating Debtors jointly own the Trailer.[17] The Trustee never questioned Ms. Allen about the

---

[11]  *Tr.* at 6, *in* Appellants' App. at 135 ("The debtors used certainly [sic] the trailer for their business . . . but we don't believe [ ] that qualifies as a tool of the trade . . . .").
[12]  *Id.* at 12, *in* Appellants' App. at 141.
[13]  *Id.* at 18, *in* Appellants' App. at 147.
[14]  *Id.* at 31, *in* Appellants' App. at 160.
[15]  *Id.* at 33, *in* Appellants' App. at 162.
[16]  *Id.* at 31, *in* Appellants' App. at 160.
[17]  *Schedule A/B: Property* at 12, 4, *in* Appellants' App. at 65, 57.

scope of their concrete resurfacing business including the number of jobs, number of hours devoted, gross and net income, assets, business reports, or similar questions.

Paul Allen also testified at the hearing. Mr. Allen's testimony focused on his wages from his employment at FedEx and the claimed exemption in the wages Capital One Bank garnished.[18] The Trustee did not cross-examine Mr. Allen.

At closing argument, the Trustee asserted the Trailer did not qualify as a tool of the trade under New Mexico Statutes §§ 42-10-1, -2. The Trustee admitted the Trailer "was used for the [D]ebtors' business" and "those facts [were] not in contest."[19] The Trustee argued the Bankruptcy Court should deny the exemption for two primary reasons: (1) because the Trailer is a "general piece of equipment that's not specialized for any trade but can be used for ordinary purposes"[20] and (2) the Trailer did not belong to Debtors but to J&K, LLC, suggesting Debtors transferred it as "a capital contribution to the business."[21] Accordingly, the Trustee argued the Trailer belonged to J&K, LLC and Debtors could not claim an exemption in it. Again, the Trustee did not challenge the "trade" portion of the "tools of the trade" exemption.

After Debtors' closing argument, the Bankruptcy Court identified three issues regarding the tools of the trade exemption: (1) whether the Trailer may be considered a tool of a trade; (2) whether Debtors' failure to list any tools of the trade in *Schedule A/B* prevented them from claiming the exemption; and (3) whether the Trailer is owned by

---

[18]   *Tr.* at 35-39, *in* Appellants' App. at 164-68.
[19]   *Id.* at 40, *in* Appellants' App. at 169.
[20]   *Id.*, *in* Appellants' App. at 169.
[21]   *Id.* at 41, *in* Appellants' App. at 170.

Debtors or J&K, LLC.[22] Further explaining the last issue, the Bankruptcy Court stated, "if it's going to be exempt under the tool of the trade, it's got to be the trade of the debtor, and so [the Trustee] wants me to make a distinction because the debtor incorporated and so it was actually under a trade of an LLC not of the debtors."[23]

The Bankruptcy Court later issued a written opinion denying Debtors' $750 claim of exemption in the Trailer.[24] In analyzing the tools of the trade exemption, the Bankruptcy Court held the Trailer "could qualify as a tool of the concrete refinishing trade" under the "use test" as it was used exclusively in the business and necessary to the business.[25] The Bankruptcy Court also held Debtors owned the Trailer and not J&K, LLC.[26] The Bankruptcy Court found no support for the Trustee's argument the Trailer belonged to J&K, LLC. The Opinion states, "the only evidence in the record is that the [Debtors] bought the [T]railer personally and never transferred it to J&K."[27] The Court did not address Debtors' failure to list the Trailer as a tool of the trade in their petition.

The Bankruptcy Court then *sua sponte* raised a new issue—whether the concrete refinishing business is a "trade" for purposes of the New Mexico tools of the trade exemption statute.[28] The Bankruptcy Court concluded New Mexico courts would likely "insist that a secondary trade contribute in a meaningful way to the debtor's support."[29]

---

22    *Id.* at 60, *in* Appellants' App. at 189.
23    *Id.* at 67, *in* Appellants' App. at 196.
24    *In re Allen*, 619 B.R. 6 (Bankr. D.N.M. 2020).
25    *Id.* at 13.
26    *Id.* at 11.
27    *Id.* at 11.
28    *Id.* at 13.
29    *Id.*

The Bankruptcy Court found Debtors scheduled "a monthly loss of about $200 from J&K" in *Schedule I* but showed "slim earnings" from J&K, LLC in their *Statement of Financial Affairs*.[30] These findings suggested J&K, LLC's income "either contributes about 4.5%" to Debtors' income "or *reduces* their income by about 4.5%."[31] Either way, the Bankruptcy Court found "concrete refinishing cannot fairly be considered a 'trade' of" Debtors, who primarily relied on Mr. Allen's employment at FedEx for their support.[32] Accordingly, the Bankruptcy Court denied the tools of the trade exemption claimed in the Trailer. Debtors filed a timely notice of appeal of the Opinion and order denying the claim of exemption.

## II.     Jurisdiction & Standard of Review

"With the consent of the parties, this Court has jurisdiction to hear timely-filed appeals from 'final judgments, orders, and decrees' of bankruptcy courts within the Tenth Circuit."[33] Neither party elected to have the United States District Court for the District of New Mexico hear this appeal; thus, they have consented to our review. "A decision is considered final if it 'ends the litigation on the merits and leaves nothing for the court to

---

30      *Id.* at 13-14.
31      *Id.* at 14.
32      *Id.*
33      *Straight v. Wyo. Dep't of Trans. (In re Straight)*, 248 B.R. 403, 409 (10th Cir. BAP 2000) (quoting 28 U.S.C. § 158(a)(1); 28 U.S.C. § 158(b)(1), (c)(1); Fed. R. Bankr. P. 8002).

do but execute the judgment.'"[34] An order denying a debtor's exemption claim is a final order for purposes of appellate review.[35]

The denial of the Trailer exemption claim is premised on the Bankruptcy Court's interpretation of New Mexico's exemption statutes. Whether a bankruptcy court correctly interprets and applies a state statute is a question of law reviewed *de novo*.[36] "*De novo* review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision."[37] However, a bankruptcy court's findings of fact related to a debtor's claim of exemption are reviewed for clear error.[38] "A finding of fact is clearly erroneous if it is without factual support in the record or if, after reviewing all of the evidence, we are left with the definite and firm conviction that a mistake has been made."[39]

The Bankruptcy Court's ultimate "denial of an exemption is reviewed for abuse of discretion."[40] "Under the abuse of discretion standard 'a trial court's decision will not be

---

[34]    *In re Duncan*, 294 B.R. 339, 341 (10th Cir. BAP 2003) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996)).

[35]    *In re Kester*, 339 B.R. 749, 752 (10th Cir. BAP 2006) (quoting *In re Carlson*, 303 B.R. 478, 480 (10th Cir. BAP 2004), *aff'd*, 493 F.3d 1208 (10th Cir. 2007).

[36]    *See In re Gledhill*, 164 F.3d 1338, 1340 (10th Cir. 1999); *see also In re Carlson*, 303 B.R. at 481 (citing *Sloan v. Zions First Nat'l Bank (In re Castletons, Inc.)*, 990 F.2d 551, 557 (10th Cir. 1993) (reviewing court's interpretation of state exemption statute *de novo*)).

[37]    *Peters v. Clark (In re Bryan)*, 857 F.3d 1078, 1091 (10th Cir. 2017) (citing *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991)).

[38]    *In re Hodes*, 308 B.R. 61, 65 (10th Cir. BAP 2004) (citing Fed. R. Bankr. P. 8013; *First Bank v. Reid (In re Reid)*, 757 F.2d 230, 233 (10th Cir. 1985)).

[39]    *In re Miniscribe*, 309 F.3d 1234, 1240 (10th Cir. 2002) (quoting *Conoco, Inc. v. Styler (In re Peterson Distrib., Inc.)*, 82 F.3d 956, 959 (10th Cir. 1996)).

[40]    *In re Ford*, 492 F.3d 1148, 1153 (10th Cir. 2007) (citing *In re Calder*, 973 F.2d 862, 868 (10th Cir. 1992)).

disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'"[41] When a trial court "errs in deciding a legal issue, it necessarily abuses its discretion."[42]

### III. Discussion

#### a. Standard for Interpreting Exemption Statutes

Section 522 of Title 11 of the United States Code allows a chapter 7 debtor to exempt certain property from the bankruptcy estate, preventing a trustee from liquidating the property and distributing the proceeds to creditors.[43] In New Mexico, bankruptcy debtors may claim exemptions provided by Title 11 or by state statute.[44] In this case, Debtors chose to exempt property pursuant to New Mexico Statutes §§ 42-10-1, -2.

When a debtor claims a *state-created* exemption, state law determines the exemption's scope.[45] Bankruptcy courts are permitted to disallow state-created exemptions upon application of state law.[46] In interpreting "state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must

---

[41]    *In re Bryan*, 857 F.3d at 1091 (quoting *McEwen v. City of Norman*, 926 F.2d 1539, 1553-54 (10th Cir. 1991)).
[42]    *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1184 (10th Cir. 2006) (citing *Koon v. United States*, 518 U.S. 81, 100 (1996)).
[43]    *See* 11 U.S.C. § 522(l).
[44]    3 William L. Norton, III, Norton Bankr. L. & Prac., App'x 56-C § 56-C:34 (3d ed. 2021) ("New Mexico has not elected to 'opt out' of the federal exemptions pursuant to Code § 522(b).").
[45]    *Law v. Siegel*, 571 U.S. 1188, 1196-97 (2014).
[46]    *Id.* at 1197; *In re Hodes*, 402 F.3d 1005, 1009 (10th Cir. 2005) (citing *In re Lampe*, 331 F.3d 750, 754 (10th Cir. 2003)).

endeavor to predict how that high court would rule."[47] In predicting how the state's highest court would rule, a federal court may seek guidance from rulings of lower court's in the state, appellate decisions in other states with similar legal principles, district court decisions on the state law questions, and the general weight and trend of authority in the relevant area of the law.[48]

New Mexico Statutes § 42-10-1 provides "every person supporting another person" a $1,500 exemption in "tools of the trade."[49] The New Mexico Supreme Court liberally construes exemption statutes in a debtor's favor.[50] New Mexico case law provides the primary purpose of exemption statutes serves to protect innocent dependents from the consequences of the primary decisionmaker's poor fiscal choices.[51] There is no New Mexico case law specifically analyzing the tools of the trade exemption statute.

### b. Arguments on Appeal

As noted above, the Bankruptcy Court did not grant relief based on the questions it identified at close of the hearing on the Trustee's Objection to Exemptions. Instead, the ultimate disposition of the Objection to Exemptions focused on an issue the Trustee did not raise in either the pleadings or at the hearing: whether J&K, LLC's concrete

---

[47] *Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002) (referencing *Comm'r v. Bosch's Estate*, 387 U.S. 456, 464-66 (1967); *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1228 (10th Cir. 2001); *Commerce Bank, N.A. v. Chrysler Realty Corp.*, 244 F.3d 777, 780 (10th Cir. 2001)).
[48] *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 666 (10th Cir. 2007) (citing multiple Tenth Circuit cases for the proposition stated).
[49] N.M. Stat. Ann. § 42-10-1 (1978).
[50] *McFadden v. Murray*, 257 P. 999, 1001 (N.M. 1927).
[51] *D'Avignon v. Graham*, 823 P. 929, 933 (N.M. Ct. App. 1991).

refinishing business constituted a "trade" for exemption under the "tools of the trade" exemption statute. Analyzing this issue required the Bankruptcy Court to consider when a venture is a trade under New Mexico law. The Bankruptcy Court concluded:

> New Mexico appellate courts would be fairly flexible in determining a debtor's trade and likely would allow a debtor to exempt tools for a side business, if the business contributed a reasonable amount to her income. However, the Court predicts that New Mexico appellate courts would insist that the secondary trade contribute in a meaningful way to the debtor's support. Hobbies and insignificant side businesses would not qualify.[52]

Upon reaching this conclusion, the Bankruptcy Court analyzed Debtors' schedules suggesting they earned little or no income from the concrete refinishing business. Lacking income, the Bankruptcy Court found the business was not a trade because it did not contribute to Debtors' support and denied the exemption claim.

On appeal, Debtors argue: (1) the Trailer constitutes a "tool" for the tools of the trade exemption under New Mexico law, (2) Debtors and not J&K, LLC owned the Trailer, and (3) the Bankruptcy Court made erroneous conclusions of law by adopting an "income test" for a trade. The Trustee argues the Bankruptcy Court correctly denied Debtors' claim of exemption. In support, the Trustee argues: (1) Debtors failed to disclose any tools of the trade in their schedules, (2) concrete refinishing is the trade of J&K, LLC, not Debtors, and (3) performing a trade under a business entity owned by Debtors (J&K, LLC), prevents it from being Debtors' trade.[53]

---

[52]   *In re Allen*, 619 B.R. 6, 13 (Bankr. D.N.M. 2020).
[53]   Appellee's Br. 11 ("Concrete resurfacing is J&K's business, not [Debtors'] business.").

12

We need not address Debtors' first two arguments. The Bankruptcy Court held the Trailer was a tool and found Debtors owned the Trailer, and the Trustee does not challenge those conclusions. Regarding the Trustee' first argument, she provides no authority suggesting the failure to disclose a tool of the trade is fatal to claim a tool of the trade exempt. The Bankruptcy Court declined to address this issue in its Opinion, and we will not consider an issue not passed on below.[54] We also reject the Trustee's second and related third argument a debtor cannot claim an exemption in a personally-owned tool used in a business operated under a separate legal entity. The New Mexico exemption statute places no such limitation.[55]

Therefore, the remaining dispositive issues in this appeal are whether the Bankruptcy Court erred when it predicted New Mexico appellate court standards for exempting tools of the trade related to a secondary or side-business, and whether the Trustee sustained her burden of proof in objecting to the same.

### c. New Mexico's "Tools of the Trade" Exemption

The Bankruptcy Court recognized the policy behind New Mexico's exemptions—ensuring those dependent on a debtor for support were not left destitute by a debtor's financial shortcomings and thus, looked to evidence of J&K, LLC's support of Debtors.

---

[54]  *Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.").

[55]  *See e.g., In re Calderon*, 501 B.R. 726, 733 (Bankr. D. Colo. 2013) ("Nothing in the text of the [exemption] statute excepts from it a debtor whose occupation is conducted through his or her separate business entity."); *In re Prowant*, No. 09-26845 EEB, 2010 WL 9922756, at *3 (Bankr. D. Colo. Sept. 16, 2010) (unpublished) ("[N]othing in the language of the [exemption] statute limits its application to businesses in which the debtor holds an equity interest.").

By doing so, Debtors argue the Bankruptcy Court adopted an "income test" for a tool of the trade exemption. We do not agree. Debtors' *Schedule I* and *Statement of Financial Affairs* were the only evidence in the record that could provide insight on Debtors' sources for support.[56] The evidence of support will be based on the particular facts in a debtor's case.[57] Profitability or income is simply one form of evidence to determine whether a trade provides a debtor support.[58] The Bankruptcy Court did not create an "income test" by referring to the income evidence in the record before it.

In *In re Sharp*, a panel of this Court was presented with a chapter 7 Trustee's objection to a tool of the trade exemption claimed under state law, with the main issue being whether a floundering side business could qualify for the exemption.[59] In *Sharp*, the debtor, like Debtors herein, had full-time employment producing his primary income.[60] But the debtor also had a side business providing outdoor guide services and had been working for several years to make that side business profitable.[61] When he filed his petition, the debtor claimed an exemption in his boats, camper, trailer, fishing rods, and other items under the Colorado tools of the trade exemption. The chapter 7 trustee

---

[56]     *See id*; Support, *Black's Law Dictionary* (11th ed. 2019) (defining support as sustenance or maintenance).

[57]     *See In re Sharp*, 490 B.R. 592, 602 (Bankr. D. Colo. 2013), *aff'd*, 508 B.R. 457 (10th Cir. BAP 2014) (explaining one factor considered in analyzing whether an item is a tool of the trade is whether the asserted "non-principal occupation . . . [is] profitable or at least capable of being profitable in the foreseeable future.").

[58]     *See In re Lipe*, 36 B.R. 597, 598 (Bankr. W.D. Mo. 1983) ("'Trade' is defined as '(t)he business which a person has learned which he carries on for procuring subsistence, *or for profit*.'") (quoting Trade, *Black's Law Dictionary* (1968)).

[59]     *In re Sharp*, 508 B.R. 457 (10th Cir. BAP 2014).

[60]     *Id.* at 459-60.

[61]     *Id.* at 460.

objected to that exemption because the debtor's business was not profitable on the petition date.[62]

In Colorado, the state legislature has specifically required not a "trade" as in New Mexico's statute, but a "gainful occupation" for its tools of the trade exemption statute. The Colorado exemption exempts "tools . . . used and kept for the purpose of carrying on the debtor's primary *gainful occupation*."[63] In evaluating "gainful occupation," the Court in *Sharp* laid out multiple considerations for bankruptcy courts assessing tools of the trade objections: profitability can be a factor,[64] purely "charitable and other socially beneficial endeavors" are not necessarily enough,[65] and objective factors such as whether the venture is carried on in a businesslike manner and the time and effort spent by the debtor on the business are important.[66] The Court also noted that a business' profit cannot be assessed on the petition date as a "static concept":

> The most prevalent measure of business profitability is over a 12–month period ending on the last day of a calendar or fiscal year. Even more significantly, imposing a profitability requirement on a business that is measured on the date the debtor files a petition for bankruptcy relief is inconsistent with the general purpose of exemption statutes. It would likely render the tools of the trade exemption mostly unavailable to the very people it was intended to assist. Exemptions are most often claimed by those in financial trouble attempting to rehabilitate their financial life. Moreover, such an outcome would undermine the directive in Colorado's Constitution

---

[62]     *Id.*

[63]     Colo. Rev. Stat. § 13-54-102(1)(i) (2010) (emphasis added).

[64]     *In re Sharp*, 508 B.R. at 465 ("[I]t may reasonably be assumed that the 'fresh start' objective in bankruptcy is only served where there is some element of profitability to a trade, the tools of which the debtor seeks to retain outside of his bankruptcy estate as otherwise exempt assets.").

[65]     *Id.*

[66]     *Id.* at 466.

that exemptions be liberally construed for the purpose of preserving the debtor's means of support.[67]

The Court recognizes the New Mexico exemption is for tools used in "trade," not in "gainful occupation." But, when assessing a challenge to a tool of the trade exemption, the factors a bankruptcy court will look at are similar to the assessment of a "gainful occupation," just as the purpose of the exemption statutes are similar. The Bankruptcy Court here did not err when it considered Debtors' income from the concrete resurfacing business. Instead of imposing an income test, the Bankruptcy Court simply reviewed the only evidence in the record shedding light on whether concrete refinishing provided support to Debtors. The Bankruptcy Court's approach to the tool of the trade exemption claim is in line with case law addressing other tool of the trade exemption statutes.

### d. Satisfying the Trustee's Burden of Proof

Federal Rule of Bankruptcy Procedure 4003 outlines the process for objecting to an exemption claim. Rule 4003(b)(1) provides "a party in interest may file an objection to the list of property claimed as exempt . . . within 30 days after any amendment to the list or supplemental schedules is filed."[68] The objecting party bears the burden of proof on an exemption claim.[69] In such a matter, the objecting party must prove the exemption is

---

[67]     *Id.* at 466-67.
[68]     Fed. R. Bankr. P. 4003(b)(1).
[69]     *See* Fed. R. Bankr. P. 4003(c) ("In any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed."); *In re Hodes*, 402 F.3d 1005, 1010 (10th Cir. 2005) (citing Fed. R. Bankr. P. 4003(c) and stating, without discussion: "[t]he objecting party bears the burden of proof on an objection to a claimed exemption"); *see also In re Lampe*, 331 F.3d 750, 754 (10th Cir. 2003) ("Once a debtor claims an exemption, the objecting party bears the burden of proving the exemption is not properly claimed"). *But see*, *e.g.*, *In re Diaz*, 547 B.R. 329, 337 (9th Cir.

improper by a preponderance of the evidence.[70] Only if the objecting party produces evidence to rebut the exemption does the burden shift to the debtor to present evidence to demonstrate the exemption is proper.[71] "The application of the burden of proof is a question of law, reviewable *de novo*."[72] Accordingly, prevailing on the Objection to Exemptions required the Trustee to show by the preponderance of the evidence Debtors improperly claimed the exemption in the Trailer. Only at that point did the burden shift to Debtors to rebut evidence suggesting they improperly claimed the exemption.

The Trustee did not call a witness at the hearing and only cross-examined Mrs. Allen. Cross-examination of Mrs. Allen addressed Debtors' failure to list the Trailer as a tool of the trade in amended *Schedule A/B: Property*. The Trustee also inquired about the Trailer's ownership, to which Mrs. Allen responded she and her husband owned it personally. This entails the sum of the evidence the Trustee submitted to the Bankruptcy Court.

---

BAP 2016) (discussing *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15 (2000) and concluding "where a state law exemption statute specifically allocates the burden of proof to the debtor, Rule 4003(c) does not change that allocation"). Because we are bound by Tenth Circuit precedent on the burden of proof, we apply Rule 4003(c) without considering whether New Mexico's exemption statutes place the burden similarly. No party has raised the issue of burden of proof, so we have no developed record or legal arguments upon which to challenge the placement of the burden of proof by Rule 4003(c).

[70] *In re Hodes*, 402 F.3d at 1010 (citing *In re Sims*, 241 B.R. 467 (Bankr. N.D. Okla. 1999)).

[71] *In re Gregory*, 245 B.R. 171, 174 (10th Cir. BAP 2000), *aff'd*, 246 F.3d 681 (10th Cir. 2000); *In re Robinson*, 295 B.R. 147, 152 (10th Cir. BAP 2003) (burden shifts to the debtor claiming the exemption "to come forward with evidence to demonstrate that the claimed exemption was proper").

[72] *In re Harmsen*, 320 B.R. 188, 197 (10th Cir. BAP 2005).

The Bankruptcy Court, reviewing the standard to claim a New Mexico statutory exemption, raised the issue of whether the concrete refinishing business constitutes Debtors' trade *sua sponte*. As stated, analyzing Debtors' trade required the Bankruptcy Court to consider the amount of income or support, or lack thereof, Debtors derived from the concrete refinishing business, how Debtors carried on the business, and the time and effort spent on the business, etc. Debtors argue the Bankruptcy Court "relieved the Trustee of the burden."[73] We do think the Bankruptcy Court incorrectly concluded the Trustee sustained her initial burden of proof in her objection to the exemption.

As the objecting party, the Trustee had the burden of proving the concrete refinishing business did not constitute a trade. Yet, the Trustee presented no evidence on Debtors' involvement in the business, the calculation of net income, historic or expected income, or similar considerations, leaving the Bankruptcy Court to consider the only evidence available—Debtors' schedules. The Bankruptcy Court explained the schedules were unclear, suggesting the "concrete refinishing business either contributes about 4.5% [to Debtors'] income or *reduces* their income by about 4.5%."[74] Accordingly, the Bankruptcy Court found concrete refinishing did not contribute any meaningful amount of support to Debtors and denied Debtors' exemption claim in the Trailer.

---

[73]    Appellants' Br. 25.
[74]    *In re Allen*, 619 B.R. 6, 14 (Bankr. D.N.M. 2020). The Bankruptcy Court relied on the *Statement of Financial Affairs for Individuals Filing for Bankruptcy*, jointly showing $1,070 in income from operation of a business and *Schedule I*, showing a loss of approximately $200 from operation of a business. Appellants' App. at 73, 213.

Although the Trustee included Debtors' schedules in her exhibit list and the Bankruptcy Court may take judicial notice of schedules,[75] the Bankruptcy Court's findings based on the schedules are at best inconclusive. Moreover, the Trustee did not introduce Debtors' schedules to show the concrete refinishing business did not contribute to Debtors' support and put on no evidence concerning historic profitability or if the concrete resurfacing work would contribute to Debtors' income within a reasonable period of time going forward. As noted above, this Court in *Sharp* previously explained assessing a business' profitability on the petition date contravenes the "general purpose of [tools of the trade] exemption statutes."[76] The Trustee did not satisfy her burden of proving the exemption was improper because she did not provide the Bankruptcy Court with sufficient evidence to make the determination denying Debtors' claim of exemption in the Trailer and such was an abuse of the Bankruptcy Court's discretion.[77]

---

[75] *In re Sherman*, 18 F. App'x 718, 721 (10th Cir. Aug. 31, 2001) (unpublished) ("bankruptcy court may take judicial notice of schedules to the bankruptcy petition filed by the debtor.") (quoting *Pembroke Dev. Corp. v. Commonwealth Sav. & Loan Ass'n (In re Pembroke Dev. Corp.)*, 124 B.R. 398, 401-02 (Bankr. S.D. Fla. 1991)).

[76] *In re Sharp*, 508 B.R. 457, 466–67 (10th Cir. BAP 2014) (Imposing a profitability requirement on a business measured on the date a debtor files for bankruptcy is inconsistent with the general purpose of exemption statutes).

[77] In addition, even if the Trustee had sustained her burden of proof, the posture of the contested matter unfairly prevented Debtors from overcoming any evidence or argument attributable to the Trustee. As noted above, the Bankruptcy Court raised the issue of "trade" *sua sponte*, and deprived Debtors of notice of the arguments they must overcome. Fed. R. Bankr. P. 9014(a). *See also In re Gledhill*, 76 F.3d 1070, 1083 (10th Cir. 1996) (quoting *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 (1978) (explaining due process minimums require notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

## IV.    Conclusion

The burden of proof in objecting to Debtors' claim of exemption in the Trailer fell on the Trustee. As the Bankruptcy Court determined Debtors owned the Trailer and it could qualify as a tool of the concrete refinishing trade, the Trustee failed to carry her burden of proving Debtors improperly claimed an exemption on those grounds. Absent the Trustee's presentation of evidence indicating concrete refinishing is not Debtors' trade, the Bankruptcy Court improperly sustained the Trustee's objection to the exemption because the Trustee did not meet her burden of proof. Accordingly, the denial of Debtors' claim of exemption in the Trailer was an abuse of discretion, and the Bankruptcy Court's decision is REVERSED.